May it please the court, counsel. The plan here is that Dan Maloney and Michael Kennedy appearing on behalf of Mr. Wong, the plan is that I would spend 10 minutes talking about the jury instruction issues, and Mr. Kennedy will spend 5 minutes talking about the confrontation hearsay type issues, and we would reserve 5 minutes for rebuttal. So that's what we're hoping to accomplish here today. The two jury issues are the specific unanimity instruction and the willful instruction in the tax case. I'm going to concentrate as much as possible on the willful instruction in the tax case. You have a tendency when you're emphasizing to lower your voice instead of increasing it. I suggest you'll do better if you speak closer in the microphone so we can hear you. I will give that a try. The three points that I wanted to start to make on the tax fraud cases, and it's 28 U.S. Code 7206 sub 2, willfully assisting filing a false income tax return. The three points are, one, that the translate and transcribe defense of Mr. Wong is a valid legal theory. That is, it is a defense to those charges. For that, we rely upon cases like Cheek from the United States Supreme Court, and I gave a supplemental memorandum of authority, recent decision from the Ninth Circuit, Cohen, that talked about the circumstances where the gentleman was able to produce information about his mental state. The important fact in those cases for our standpoint is that it is Mr. Wong's subjective intent and his subjective belief as to whether or not he is violating a known legal duty that is at issue in these cases. The second point we want to make is that the jury instructions requested by Mr. Wong were an accurate statement of the law and included an ability for the judge or for the jury to resolve the factual dispute in this case, his subjective mental state. And the third point, of course, would be that the instructions by the trial court did not allow that to happen. So I've attempted to explain that in the brief and set out the points that we made, and so I'm going to take one more shot within the context of this case, exactly what went wrong, exactly what is our problem here today. And the circumstance that we say is there is a point where Mr. Wong is talking to one of the IRS agents, and I believe it is Mr. Crowder, and I believe it is at the excerpt of record, the way they're labeled, page 546. I can check that. But Mr. Wong tells the agent on cross-examination, I didn't think I was doing anything criminal. That's a defense to the charge. Did the jury resolve that as a factual matter on the instructions given? And our answer to that question is no, they did not. Why? What happened? What went wrong? Three things. Number one, the court told the jury that there were two elements. These cases are three-element cases. That's cases like Salerno says that, and also that then comes from cases like Cheeks, which were cited in support of the instructions requested. Two, the specific intent is Wong's specific intent that the returns be false and that he violate his legal duty by filing those false returns. The specific intent instruction given by the trial judge in this case did not include the information specifically telling the jury that Wong must know that the returns are false and he must intend to file those. And then there's a further step from that, that he must also know he is violating his legal duty as opposed to merely violating a legal duty by there may be a false return that was filed that has nothing, you know, whether or not that's his responsibility. His responsibility was transcribe and translate. The third aspect that we say is incorrect in those is the burden of proof on good faith. These are, there is a defense of good faith in these cases. That's, I mean, again, Cohen talks about that some. Cheeks specifically talks about that. The good faith negates willfulness. Willfulness is an element of the offense. The jury was never told who has the burden of proof on good faith. The instruction requested by Mr. Wong specifically told the jury he has no burden. It's the government's burden to negate that. But when you look at the instructions as a whole, which I think we have to do, don't we, where is the real, if you just put your finger on, where is the injustice to your client in like two sentences? The information, and this is Wong's instruction at ER 18 compared to the court's instructions at ER 12 and 13, the specific intent, when it was his legal duty not to do so, and he knew it was his legal duty not to do so, that's what we say is missing in the case, is they can't convict just because there were false returns. They must have had to find that Wong knew and intended to file false returns. That's one. And there has to be another aspect of that, that he knew it was his legal duty, not just what a person knows must disregard the law. A person could know to file a false return disregards the law. To be convicted under this statute, they must specifically find that Wong knew what he was doing in his circumstance violated his known legal duties. That is, translate and transcribe is not a valid defense, and under the law, it is a valid defense, and the jury has to resolve it as a factual matter. The instructions given to them did not let them know that they had to resolve that as a factual matter. I mean, that's the gist of it. So, I mean, unless there's some specific questions, I got through that a lot faster than I thought I was going to, but I think that's really where we're at. That's really the key. Nowhere in those jury duties, his legal duty as opposed to just a legal duty not to file false tax returns and translate and transcribe is a valid defense. So, counsel, you're saying that the jury instruction should have told the jury that Mr. Wong knew that by willfully assisting or advising someone in the preparation of an income tax return that was false, he acted knowingly and did not have good faith or could not have good faith? Is that the argument? Well, it's tangled up in there. I would split it out a little bit differently. What they have to tell them is that Wong had to know he had a legal duty to ensure that the information that he put on those tax returns was not false. Isn't that covered by the willful instruction? Our position is it's not because it's something that a person knows disobeys or disregards. Willfully assist is something the person knows disobeys or disregards the law. It's kind of, let me try and take another shot at it this way, is that he had this idea that because he didn't ask for money up front and he would accept whatever they paid him, that he was not being paid for preparing taxes. Now, in the false statement cases, they don't have to resolve that. They don't have to say whether or not he had that subjective belief. In the tax cases, that sort of idea that he had, the idea is because he was acting as a translator and he just took the information, put it on the forms, estimated the values and did the calculations, they have to specifically find in that case that he knew he was violating his legal duty. Not merely that the taxpayers may have been doing something wrong and he definitely was assisting them by translating and transcribing. There's another aspect to that. But he was assisting in the filing of a false tax return. And the point I want to make is the jury could find that and he's still not guilty. And that's his legal duty, Cheek's subjective good faith, because I didn't believe it was my responsibility. I didn't know it was my legal duty to make sure that the numbers these people gave me tracked and were accurate. And so we're saying that's the aspect that was missing. So you're saying that somehow Mr. Wong could have formed a good faith belief that he could assist someone willfully to prepare a false tax return and not be convicted of the offense he was charged with? Yeah, the language that you put it in, I think, is a little bit, I mean, but that's the gist of it. Is that if he, it's like in Cohen, the guy who zeroed out all the returns. If he has a good faith belief that he can zero out all his returns, that's a defense. Where does the willfully go? Is that the person who he's preparing it for or does that go to him? It has to go to him. Yeah. It has to go to him. He has to independently act willfully, independent of what they had to do. And, again, in Cheek's it was the guy who just believed it was an income. I mean. That's different, isn't it? That's different, right? But he has to know his legal duty. And so if he understands it, but has the good faith belief, and that's where the good faith belief, but it's not really a good faith belief. It's an honestly held belief, whether or not subject or whether or not objectively reasonable. Okay. That's where good faith comes in. Colleague. Okay. Thank you. Good morning. Michael Kennedy on behalf of Mr. Wong. There are two issues. The first one is with respect to counts 16, 17, and 18, there was no testimony from the taxpayer. There was no testimony that the numbers that were placed on the form were false. And there was an insufficiency of the evidence since the taxpayer himself did not come in and testify. There was an assumption. But didn't the person who provided the information to the taxpayer, to Mr. Wong, I believe it was the father, didn't he testify? He testified that Mr. Wong handed him something and he mailed something. What he didn't testify to was whether there were any communications with respect to the son. In fact, he was cross-examined on the fact that after he said, oh, Mr. Wong has never met the son, would it surprise you that the son has identified Mr. Wong and photo ID? Would it surprise you that your son told these agents that he met with Mr. Wong for dinner? Would it surprise you this? So the problem is you don't know that the numbers on the page are false unless someone comes in and testifies that they are. Otherwise, they're just numbers on the page. So hence there was a confrontation issue with counts 16, 17, and 18, because of course they're being offered for the truth of the matter of the contents. Then you bring on, in the other cases, other taxpayers who say, for the truth of the matter of these contents, we now say those are false and we didn't know anything about it. Hence that forms the convictions. So 16, 17, and 18, there's insufficient evidence and there's a confrontation clause issue. With respect to counts 21 and 22, and who the government identified as their key witness, Ms. McDonald, there was a confrontation clause violation during the cross-examination into an area of cross-examination. Now, let me set the stage. Ms. McDonald was the one taxpayer, other than there were two taxpayers, one taxpayer who had immunity. Immunity obviously takes away from the government, by definition, any prosecution, and it takes away from the trial judge any decision in terms of sentencing, because the executive branch is removing that. So hence the question was asked in the cross-examination story of how somebody comes in and gets immunity and says, oh yeah, he did it, it was all his idea. I know I got $10,000 and he didn't get anything at all, other than some monies afterwards for putting down the numbers for me, but I got immunity. So the question was, what is the value of that immunity? What is the value of it? Are you getting an immunity from a misdemeanor? Are you getting an immunity from a felony? Are you getting an immunity from some other sentence? What is the value for the bias cross-examination? What was the specific question asked? The specific question asked was, you went to your lawyer and your lawyer told you you could get five years, which is how the person then decides, okay, I'm going to go test. You're telling me if I go testify against Mr. Wong, I get a complete walk? That's the bias cross-examination. Now, I will say it wasn't asked in a way that would, here's the three-part test that this Court has looked at in Larson. Is it relevant? Is bias relevant? Of course it is. It's a credibility determination and somebody with immunity. The Court has indicated there's a lying part of it. It's just speculation. The Court has indicated that if you're sure what's going to happen, like a minimum mandatory or life sentence, then it's material. But if it's just speculation, which you might, good, it's not material. Why should we overturn all those cases for you? You don't need to, Your Honor, because the facts of this case is this is an immunity situation. Those other cases are in the situation where someone has pled guilty, they're awaiting sentencing, and there is a sentencing judge who will make the final determination. Here, like a mandatory minimum where it's an assurance that somebody is going to get five years or there's an assurance that somebody is going to get life, here the immunity gives them zero, nothing. So what you're doing is you're doing the comparison for the bias. There is no action by the sentencing judge. The balancing in those other cases is to mislead the jury that Mr. Wong would be looking at the number. But here, obviously, Mr. Wong was looking at 22 times 5, theoretically, which would be 120 years. Ms. McDonald could have been prosecuted in four counts. So if you wanted to do it, it would be 5 plus 4 to 20. The question was just your lawyer told you you could be looking at five years, and that's part of the decision that goes into getting the immunity. Because what she testified to was I went to them and I said, give me immunity, and then I'll testify against Wong. They gave it to her, and hence she came in and laid him out. That's the difference with those cases. But it was pointed out to the jury that, in fact, she could have received five years, right? That was sustained. No, Your Honor, that question was asked, that was sustained, and that line of questioning and the answer that was given was stricken. So that did not go to the jury. So it's as if there was nothing. Okay, she got immunity. Immunity from what? There was no balancing of the magnitude of given to her, which is the difference with those other cases is here in the Larson case, they're going to get five years. They're going to get some amount. Here they get a complete pass. The bias is even greater and the need to give the jury some guidance is there. And juries resolve factual issues every day that are more complicated than this. They can figure out, oh, gee, do I believe her if I find out she was going away and could have gotten it? What's the strongest case in your favor, that this is a confrontation clause, the Larson case and the Fourth Circuit case, Hoover v. State v. Maryland, where two questions resulted in a reversal that we cited in the briefs. I'll note that we cited it as United States v. Hoover. That was incorrect. It should be State, Hoover v. State of Maryland, but the number is correct. Thank you. Thank you. Good morning. May it please the Court. Brian Quarles for the United States. There are several reasons that strongly support affirming an appellant's conviction in this case. First, the district court instructed the jury with the correct statement of Ninth Circuit current law. Second, the district court's ruling overruling appellant's objection to minimal limitations on the cross-examination of a cooperating witness did not deprive the jury of sufficient evidence to appraise the witness's bias, motivations for testifying. And third, the district court properly admitted tax returns of a non-testifying witness. Opposing counsel's arguments regarding the willfulness instructions are unsupportable by the case law settled in this court. First, the district court need not give a particular language proposed by appellant, whereas here the instructions fairly and adequately cover appellant's theories of defense. Here, appellant argues that the government had to disprove good faith in order to establish intent. That certainly contravenes the settled case law in this circuit. Citing United States v. Shipsy, found at 363F3962, the court held that criminal defendant has no right to any good faith instruction when the jury has been adequately instructed with regard to the intent required to be found guilty of a crime charged. That's in essence what the court did here. The court provided, in fact, that appellant's conduct had to be intentional and voluntary with specific intent to assist the filing of a false tax return, specifically adequately covering his theory of defense. So I would submit that his issue regarding the willfulness, the error in the willfulness instruction, is unsupportable by the case law in this district, excuse me, in this circuit. I would also submit that because of the overwhelming evidence supported by appellant's guilt in this case, even if the proposed interpretations, which I would suggest are unreasonable, for opposing counsel to argue that his client had a legal duty to file a, to willfully file a knowing false return, it's not a reasonable interpretation of the jury instructions that were provided, nor has he demonstrated that this proposed interpretation prejudiced him, nor that it somehow materially affected the jury's verdict in this case. Moving on to the cooperation issue, I would submit that appellant was given a full opportunity to cross-examine and explore the benefits of the witness, the benefits the witness received in exchange for a testimony. Specifically, I would refer to the case of United States v. Garcia, found at 988 FSEC at 965. In a similar context, the court said the relevant information for the jury was an informant's bias and motive to testify falsely regarding the immunity grant. That's what happened in this case. Here, the jury had information to assess the witness's credibility regarding that the witness had, in fact, received immunity for a testimony, the witness would not be prosecuted for testifying regarding appellant's preparation over taxes, the fact that the witness had filed a false tax return, the witness would not receive or had not received at that time a jail time, a conviction, or had to appear in court in exchange for her immunity. So the record in this case strongly supports that although there was an objection sustained regarding specific sentence that may have been imposed, the jury had ample information and evidence to fully assess the credibility and bias and the motivation for this witness's testimony. The other part that supports that the jury was not misled as to the innocence, if you will, of this witness, was because the district court properly instructed the jury that they should examine the testimony from witnesses who received immunity with greater caution than that of other witnesses. So, Counsel, your point is that the defense counsel was given the opportunity to cross-examine at least as to part of the area of immunity and punishment, et cetera, correct? Your Honor, I would submit that both direct examination, because this came across when the government actually presented the witness, and cross-examination fully apprised the jury to assess the witness's credibility, specifically asking if she would be prosecuted for testifying. And so if the trial judge allowed questioning as to at least part of the area, our standard of review would be abuse of discretion. That's correct, Your Honor. I agree with that, Your Honor. The last point I would like to point out about the cooperation witness is that there was overwhelming evidence presented in this case. This is a case where an appellant was charged with aiding and assisting 18 taxpayers with filing 47 false tax returns. Witness after witness presented the essentially consistent testimony that the defendant prepared these tax returns, was in his handwriting, and that he received money for preparing them. So even if we're to discount the testimony of the cooperating witness, there's ample and abundant evidence to support the appellant's guilt regarding his assistance in filling these tax returns. And the last point, I would submit that regarding the admission of the tax returns of the non-testifying witness, there's several reasons that support the admission of those documents. First, it's actually admission by a party opponent. The evidence supports that it was the defendant's handwriting, that he was paid for it, and that he substantially participated in preparing these tax returns. I would also submit that case law in this circuit supports that it's not being offered for the truth of the matter asserted because it was presented to demonstrate falseness, the charitable contributions as false deductions in the tax returns. And unless there are any other questions, I would submit based on what we've included in our briefs.  No. Thank you, counsel. Very briefly in the rebuttal time, Judge Schroeder, you asked what was the problem with the instructions as a whole. There are three areas. First, it is black-letter law that the government has the burden to prove good faith. We submitted a sentence in an instruction that said the burden of proving good faith does not rest with the defendant because the defendant has no obligation to prove anything to you. The court rejected that. The government objected to that instruction. And the jury was never told whose burden good faith was on. Second, the judge made a finding after judge – The government doesn't have a burden to prove – It does, just like an entrapment. When good faith is in the case, they have a burden, and that is in the stock instruction for 7201 that says in the comments, if good faith is shown, it says fourth or fifth. The government – he didn't – the defendant did not act in good faith. So once that is shown, they have that burden, and the jury was never told. Lack of good faith. Lack of good faith, yes. So there was no – if burden fell on Mr. Wong instead of the government, that's the problem with the instructions as a whole. But how do you get around Cheek? It says if the jury is instructed on willfulness, then you don't need a separate good faith instruction. Well, we get around it by subsequent decisions of this Court, which says in Powell and in other cases where subjective good faith – I think that's fine that we make statements, but that Supreme Court seems to trump what we have to say. Well, I would say that our own model instructions add it in the case subsequent to the Cheek decision where good faith is. The model instruction for 7201 tax evasion count says in the Powell Ninth Circuit case where subjective good faith is shown, you have to – you instruct forth the defendant did not act in good faith. I'm pleased with what our committee has done on model instructions. I wouldn't – I don't want to be misinterpreted. But they're doing their best, but that does not trump the Supreme Court of the United States. This Court has found that that is not inconsistent with the Cheek case in the Powell case and the other cases that are cited in that comment, the Bishop case, the other cases, clearly good faith. The judge made a finding that good faith, it was in this case and there should be an instruction on it. He didn't instruct as to the burden nor did second. The problem was he didn't define what good faith is. We put in a sentence a person who acts on a belief or opinion honestly held is not guilty of counts 1 through 22 merely because that honest opinion or honest belief turns out to be wrong. So there was no definition given as to what good faith is. Thirdly, the Cheek case says that you have a duty, you know of that duty, and you specifically intend to violate that known duty. That language was requested and rejected by the court. Finally, with respect to the confrontation case issue, that area should be reviewed for de novo since it's a whole area of review in terms of what the bias is for the entire area, not just the restriction of that area. And finally, with respect to the counts that deal with ‑‑ I'm sorry. I'm sorry, counsel. I hate to interrupt you. But say that again. You're saying that ‑‑ We're saying that I agree with the court that if the court allows an area of examination that it's reviewed for abuse of discretion but under the ‑‑ it's a de novo review if there is an area which is the magnitude of the benefit given here, that was what was excluded here. The government made an argument about overwhelming evidence. This case was about 18 different folks. $40,000 went to the taxpayers. Only $700 went to Mr. Wong. All the taxpayers had that. And most of them, all but two, came in and testified. It was just serendipity that it happened. Thank you. Thank you. The case just argued is submitted. You'll hear the last case on the calendar.
judges: Wallace, Schroeder, Benitez